**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DIVISION OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **COREY SPILLER,** | )( | Civil Action No.:4:20-cv-3878 |
| | )( | (Jury Trial) |
| *Plaintiff,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **HARRIS COUNTY, TEXAS,** | )( | |
| **HARRIS COUNTY CONSTABLE** | )( | |
| **PRECINCT 7,** | )( | |
| **CONSTABLE MAY WALKER,** *Individually* | )( | |
| *and in an official capacity,* **and** | )( | |
| **SGT. JARED LINDSAY,** *Individually,* | )( | |
| *and in an official capacity,* | )( | |
| *Defendants.* | )( | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

**COMES NOW COREY SPILLER** (hereinafter sometimes "Plaintiff" or "Corey") complaining of HARRIS COUNTY, TEXAS, HARRIS COUNTY CONSTABLE PRECINCT 7, CONSTABLE MAY WALKER, *Individually and in an official capacity,* and SGT. JARED LINDSAY, *Individually and in an official capacity* (hereinafter sometimes "Defendants"), and for cause of action would respectfully show unto this Honorable Court as follows:

## I.   NATURE OF THE CASE

1.    A body worn camera video clearly shows an unprovoked attack by Harris County Constable Precinct 7 Sargent and Supervisor Jared Lindsay on Corey Spiller, who had never been convicted of a crime in his life. Instead of intervening other deputy constables joined in. Then Corey was falsely charged with felony assault on a public servant which was dismissed. This is a civil action arising under the provisions of the First, Fourth, Fifth, and Fourteenth Amendments to

1

the Constitution of the United States, and under the Civil Rights Act, Title 42 of the United States Code § 1983, seeking damages against Defendants for such violations.

## II.    PARTIES

2. Plaintiff, COREY SPILLER, is a citizen of the United States and currently resides in Harris County, Texas.

3. Defendant, SGT. JARED LINDSAY, *Individually and in an official capacity* is an individual residing in Harris County, Texas and can be served with process at 5290 Griggs Road, Houston, Texas 77021 or wherever he is found.

4. Defendant, DEFENDANT HARRIS COUNTY, TEXAS is a governmental body existing under the laws of the State of Texas and can be served with process by serving the County Judge of Harris County, Texas at 1001 Preston, Suite 911, Houston, Texas 77002 or wherever the County Judge is found.

5. Defendant, HARRIS COUNTY CONSTABLE PRECINCT 7 is a governmental body existing under the laws of the State of Texas and can be served with process by serving Constable May Walker at 5290 Griggs Road, Houston, Texas 77021 or wherever she is found.

6. Defendant, CONSTABLE MAY WALKER, *Individually and in an official capacity,* is an individual who can served with process at 5290 Griggs Road, Houston, Texas 77021 or wherever she is found.

## III.    JURISDICTION

7. This action is brought pursuant to 42 U.S.C § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction to hear the state claims, if any, that will be set forth in this complaint.

## IV. VENUE

8. Venue is proper in this district under 28 U.S.C. 1391(b) because the acts, events or omissions giving rise to this claim occurred in Harris County, Texas which falls within the United States Court for the Southern District of Texas, Houston Division.

## V. FACTUAL BACKGROUND

9. Corey Spiller (Corey) is 28 years old and has never been convicted of a crime in his life. Corey graduated from Dobie High School in Houston in 2011. He played varsity basketball as a point guard. Corey currently owns a small business.

10. On or about December 21, 2019 Corey's girlfriend was involved in a non-injury single vehicle car accident on a Houston Freeway near Corey's home. The car was not drivable.

11. Corey went to where the accident occurred to assist his girlfriend.

12. Several Harris County Constable Precinct 7 deputies were at the accident scene.

13. Harris County Constable Precinct 7 Sgt. Jared Lindsay is a supervisor (Supervisor Lindsay) and arrived at the accident scene. See **Exhibit 1**, Body worn camera (BWC) video of the incident at 4:07:27 (USB drive hand-delivered to the Court clerk).

14. At 4:07:53    Supervisor Lindsay engages two Precinct 7 deputies at the accident scene and finds out that Corey's girlfriend lost control of her car. Supervisor Lindsay takes control of the scene.

15. At 4:08:25    Supervisor Lindsay finds out Corey arrived at the scene after the other deputies had arrived. Cory and Girlfriend look sober.

16. At 4:08:48    Girlfriend speaks clearly and has appropriate responses to questions.

17. At 4:09:19   Supervisory Lindsay asks a tall black deputy and shorter black deputy "can you smell that' even though Supervisor Lindsay has not been near the girlfriend's car. Shorter black deputy shakes head "no."

18. At 4:09:24   Supervisor Lindsay says "you need to take a big whiff" and there is no response from the nearby deputies except to look away. Supervisor Lindsay speaks with Corey and his girlfriend.

19. At 4:09:39   Supervisor states investigation is done to Corey. Corey asks further questions.

20. At 4:09:47   After Corey continues to talk Supervisor Lindsay rapidly approaches Corey and gets very close and slaps Corey on the arm causing pain and says he's the supervisor.

21. At 4:09:49   Supervisor Lindsay grabs Corey by throat the throat and begins to strangle Corey.

22. At 4:09:57   Supervisor slams Corey hard on Corey's car.

23. At 4:10:00   Two deputies indicate that the Taser is about to be used. No deputy says not to use the Taser or attempts to stop the use of the Taser.

24. At 4:10:04   Deputy Lane tases Corey in the back.

25. At 4:11:13   Supervisor Lindsay is swearing, repeating he is the supervisor.

26. At 4:11:25   Supervisor Lindsay tells Deputy Lane "she's drunk dude" despite no video evidence.

27. At 4:11:47   Supervisor Lindsay says "he elbowed me."

28. At 4:12:05   Supervisory Lindsay instructs tow truck driver to tow Corey's car

29. At 4:12:27   Supervisor Lindsay says "hey have you seen my body camera?"

4

30. At 4:12:48 Deputy says to Supervisor Lindsay "hey use that thing next time" and points toward Supervisor Lindsay's hand.

31. At 4:12:51 Supervisor Lindsay says "I was too busy holding his throat."

32. At 4:13:04 Deputy Lane points at BWC on Supervisor Lindsay and asks when Supervisor Lindsay got one of those and Supervisor Lindsay says "supervisors just got 'em"

33. At 4:13:17 Supervisor Lindsay says "he's drunk too" with Deputy Lane and another deputy around "he's fucking intoxicated as well, he drove-up here as well"

34. At 4:13:17 Supervisor Lindsay arrives at Shell station where EMS and Corey are.

35. At 4:13:17 Supervisor Lindsay tells Corey to shut the fuck up. Corey is not swearing.

36. At 4:20:00 Supervisor Lindsay says you know what we are going to get assault charges on him.

37. At 4:20:00+ Deputy Lane taking photos of Supervisor Lindsay

38. At 4:22:49 Supervisor Lindsay says "I didn't get to punch the guy."

39. At 4:23:50 Supervisor Lindsay at first says he's ok to EMS then says do a full check out just in case.

40. At 4:24:22 Supervisor Lindsay says to a deputy both are intoxicated and deputy says "no she's not, you can check."

41. At 4:27:28 Older deputy says "I hope he is missing some teeth." (this deputy outranks Supervisor Lindsay-see below)

42. At 4:28:14 Supervisor Lindsay says "I had him by the throat."

43. At 4:30:08 Older ranking deputy goes to see Corey in SUV after being informed Corey would like to speak with someone of higher rank than Lindsay.

5

44. At 4:30:50     Older ranking deputy comes back and reports that Corey said he was unfairly treated and older ranking deputy says fuck you and scoffs.

45. At 4:36:06     Supervisor Lindsay says "My hand was tied up, I was strangling the guy."

46. At 4:39:40     Supervisor Lindsay says "I am going to go replay my video"

47. Corey was arrested for felony assault on a public servant and brought to the Harris County jail. At no time did Corey assault any deputy.

48. Corey hired and paid criminal defense attorney Maverick Ray to defend him on the criminal charges.

49. No deputy intervened in the actions of strangling Corey, tasing Corey, slamming Cory on Corey's car, tackling Corey, detaining Corey, arresting Corey, or prosecuting Corey and no deputy reported any other deputy for their actions.

50. The older ranking deputy at the scene did not inform Corey about the internal affairs or citizen complaint process nor start an investigation himself.

51. Supervisor Lindsay directed the filing of the police incident report involving Corey.

52. Corey bonded out of jail after around 40 hours by paying $2000.00 to a bonding company and was given a court appearance date of January 6, 2020.

53. Corey had to pay around $300 to get his car from the tow storage lot after Supervisor Lindsay ordered it towed.

54. On January 6, 2020 Corey was required by law to show up at the 184th District Court of Harris County, Texas in downtown Houston and he did show up.

55. At the January 6, 2020 hearing the body worn camera was not yet available. Corey was then ordered by the court to show up again at the 184th District Court of Harris County, Texas in downtown Houston April 6, 2020. Corey was given an off-docket reset to July 14, 2020.

56. Corey was required to show up at the 184th District Court on November 5, 2020. Sometime after he showed up his case was dismissed without any obligation or punishment.

57. At no time did Supervisor Lindsay nor any other deputy contact the Harris County District Attorney or the 184th District Court to change any statement or fact alleged against Corey or suggest that Corey's case be dismissed.

58. The Texas constable is provided for in the Texas Constitution of 1876 (Article 5, Section 18), which calls for the election of a constable in each Texas precinct of a county, and counties may have between one and eight precincts each depending on their population. When vacancies arise, the County commissioner's court of the respective county has the authority to appoint a replacement to serve out the remaining term. If no person is elected and qualified under law to fill an office of constable for seven consecutive years, the respective County commissioner's court may declare the office dormant and it may not be filled by election or appointment. The County commissioner's court may reinstate the office by a majority vote or by calling an election where a majority of precinct voters approve it. When the offices of the of Constable were abolished in Mills County, Reagan County, and Roberts County the powers, duties, and records of the office were transferred to the respective County Sheriff.

59. Constable May Walker is the elected Harris County Constable Precinct 7 since 2005 and was reelected to another 4-year term in 2020. Constable Walker is in charge of all training, discipline, promotions, hiring, firing, policies, and practices regarding the constable deputies under her command. While it is understood that the constable's office has all the deputy disciplinary and complaint documents upon information and belief this is neither Supervisor Lindsay's first incident of excessive force or false arrest nor that of other Precinct 7 deputies.

## CAUSES OF ACTION

### A.   § 1983 – Excessive Force

60.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

61.     Plaintiff asserts that Defendants used excessive and/or deadly force in the course of the deputies' illegal seizure and arrest of Plaintiff, a free citizen, in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiff asserts that he was unlawfully assaulted by Defendants and unlawfully strangled, grabbed, tackled, tased and handcuffed. Said actions resulted directly from the use of force that was clearly excessive to the need, and the use of force was objectively unreasonable. To establish that the Defendants violated Plaintiff's constitutional right to be free from excessive force, Plaintiff must show:

a.      An injury;

b.      Which resulted from the use of force that was clearly excessive to the need; and

c.      The excessiveness of which was objectively unreasonable.[1]

63.     As stated in the facts section of the complaint, the Plaintiff suffered multiple injuries as a direct result of the Defendants' actions. The Defendants' actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting the officer without regard to their underlying intention or motivation. Clearly, the facts and circumstances of this particular incident demonstrates the unreasonableness of said actions, including that Plaintiff was unarmed, bound to a wheel chair, not committing a crime, and posed no threat or danger to the police. For these reasons, it was objectively unreasonable for the Defendants to have strangled, tackled, assaulted and tased Plaintiff and their actions were clearly excessive to the need.

---

[1] *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2001).

8

### B.     § 1983 – Unreasonable Seizure/False Arrest/False Imprisonment

64.     Plaintiff hereby adopts, incorporates, restates and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

65.     Corey asserts that he was unlawfully arrested in December 2019, without probable cause to believe he had committed a crime. The Fourth Amendment prohibits the police from carrying out unreasonable seizures. An arrest is a "seizure" under the Fourth Amendment. Under the Fourth Amendment an arrest may only be made when a police officer has probable cause to believe that the person arrested has engaged in criminal conduct. An arrest without probable cause is an unreasonable seizure.

66.     Defendants did not have probable cause to seize and arrest Corey. Corey was unarmed, not resisting arrest, not physically interfering with the officer's work, and posed no threat to the officers. The facts and circumstances known to the Defendants at the time were not reasonably sufficient to cause a reasonable officer to believe that Plaintiff had committed or was committing a crime, or that she was a threat to officers.

67.     Moreover, Corey's unlawful, warrantless arrest resulted in his false imprisonment in that Defendants had no lawful right to hold Plaintiff against her will, and transport, and hold her in jail.

### C.     1983-Failure to Intervene in Excessive Force and False Arrest/Bystander Liability

68.     Plaintiff reasserts all previous paragraphs as if fully set forth herein.

69.     Plaintiff asserts that the deputies used excessive force upon Corey and falsely arrested him had time to intervene but did not intervene bywords or action.

70.     Plaintiff asserts that deputies present viewed the false arrest of Corey, and participated in it, and had time to intervene yet failed to do so.

71..    An officer may be liable under § 1983 under a theory of bystander liability where the officer

"(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

72. In *Whitley*, this Court acknowledges the theory of bystander liability for excessive force claims. *Whitley*, 726 F.3d at 646; *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (holding that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983); *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir.1983) (concluding that an "instruction on the defendant's alleged acquiescence in the unconstitutional conduct of other officers should have been given"). Other circuit courts are also in agreement that the direct use of excessive force is not required to impose liability under § 1983. *Garbacik v. Janson*, 111 Fed.Appx. 91, 94 (3rd Cir. 2004). *See also, Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir.1983) (concluding that an officer has "a duty to prevent the use of ... force, even if the officers beating [the victim] were [the officer's] superiors"); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982) (concluding "that it is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff"); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972) (stating that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge" and that this responsibility exists "as to nonsupervisory officers who are present at the scene of such summary punishment").

73. Although *Hale* most often applies in the context of excessive force claims, the 5th Circuit recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna,* 726 F.3d 631, 646 n. 11 (5th Cir. 2013)(citing *Richie v. Wharton County*

*Sheriff's Dep't Star Team*, No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)(per curiam) (unpublished)(noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations")). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). See also, *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.").

74. Thus, Lindsay and the other deputies present may be liable under § 1983 under a theory of bystander liability when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Whitley, 726 F.3d at 646.

### D.  FREEDOM OF SPEECH

75. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

76. Plaintiff alleges that he was assaulted, falsely arrested, and maliciously prosecuted because he asked questions about his girlfriend. Plaintiffs seek damages, as well as declaratory and injunctive relief, under the ADA and Section 504.

### E. No Qualified Immunity for Tasing Under § 1983

77. Plaintiff hereby adopts, incorporates, restates and re-alleges all previous paragraphs, inclusive, and with regard to all causes of action.

78. Defendants were carrying out a governmental function in effectuating the wrongful detention and arrest of the Plaintiff and employing the excessive use of force. Government actors can be entitled to qualified immunity to their individual liability but this immunity is waived if the complainant shows that:

a. The individual's act deprived the party of constitutional rights under color of law;

b. The deprived rights were clearly established and constitutional rights which existed at the time of the acts; and

c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

79. In *Kinney v. Weaver*, the Fifth Circuit explain the "clearly established" prong as follows: Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be "on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The central concept is that of "fair warning": The law can clearly be established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. *See Hope*, 536 U.S. at 740 (internal quotation marks omitted).[2]

80. In *Newman v. Guedry*, the Fifth Circuit Court addressed whether the law on the use of tasers was clearly established at the time of the event that occurred between Plaintiff and Defendants. Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding case law on the appropriate use of tasers. Lawfulness of force, however, does not depend on the precise instrument

---

[2] *See Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004) (en banc).

12

used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.[3]

81. Here, Plaintiff posed no threat to the deputies and yet he was tased in the back. The actions taken by Defendants was excessive and unreasonable under clearly established law.

82. Moreover, the right to be free from false arrest has been clearly established since at least 1975. Further, no reasonable officer could believe he had probable cause to arrest Corey as he did not commit a crime. As such, the officers are not entitled to qualified immunity.

83. The acts of the Defendants clearly violated established statutory and constitutional rights of which a reasonable person would have known, including the constitutional rights afforded by the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

### F.     Ratification by Harris County and Pattern/Practice of Excessive Force

84. Plaintiff hereby adopts, incorporates, restates and re-alleges all previous paragraphs, inclusive, and with regard to all causes of action.

85. Plaintiff had her rights violated and was injured due to the polices, practices, customs and procedures of Harris County, May Walker and Precinct 7. Defendant Harris County, May Walker, and Precinct 7 have a practice, custom, culture, procedure, and/or training of permitting and/or encouraging excessive force, false arrest, and malicious prosecution against suspects.

86. No person was disciplined after the investigation of this well documented incident, thereby ratifying the conduct as acceptable policy.

87. Harris County, Precinct 7, and May Walker and its deputies have a pattern and practice of using excessive force, false arrest and malicious prosecution on its citizens.

### VI.     DAMAGES

---

[3] *See Newman v. Guedry,* 703 F.3d 757, 763-64 (5th Cir. 2012).

88. Plaintiff hereby adopts, incorporates, and restates and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

89. As a result of Defendants' statutory and constitutional violations, Plaintiff has suffered serious and substantial damages and injuries.

## RELIEF REQUESTED

90. The preceding factual statements and allegations are incorporated by reference.

91. For these reasons, Plaintiff prays for judgment against Defendants, any or all of them, for the following:

a. Judgment against defendants jointly and severally in favor of Plaintiff;

b. Actual damages;

c. Pre-judgment and post-judgment interest;

d. Punitive and exemplary damages against Defendants in an amount to be determined and as allowed by the Court;

e. Costs of Court including attorney's fees and expenses under 42USC Section 1988 or other law; and

f. Such other and further relief as the Court deems just and equitable including appropriate.

## JURY DEMAND

92. Plaintiff respectfully demands trial by jury and has tendered the appropriate fee for the same.

## PRAYER

93. WHEREFORE, Plaintiff respectfully requests Defendants be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendants.

Respectfully Submitted,
Kallinen Law PPLC

/s/ *Randall L. Kallinen*
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:	713.320.3785
FAX:	713.893.6737
E-mail:	AttorneyKallinen@aol.com
Attorney for Plaintiff