IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **COREY SPILLER,** | )( | Civil Action No.:4:20-cv-3878 |
| | )( | (Jury Trial) |
| *Plaintiff,* | )( | |
| | )( | |
| V. | )( | |
| | )( | |
| **HARRIS COUNTY, TEXAS,** *et al.,* | )( | |
| | )( | |
| *Defendants.* | )( | |

**PLAINTIFF'S RESPONSE TO DEFENDANT JARED LINDSAY'S
MOTION FOR SUMMARY JUDGMENT and
MOTION FOR CONTINUANCE TO CONDUCT DISCOVERY**

**TO THE HONORABLE LYNN N. HUGHES:**

NOW COMES PLAINTIFF Corey Spiller, responding to Defendant Jared Lindsay's motion for summary judgment. Lindsay's motion relies on incompetent summary judgment evidence, and further relies on inferences that are inappropriate at this stage of the proceeding, thus reaching the wrong legal conclusions. He does not even approach his burden on summary judgment, and this Court should not abide his motion. Furthermore, critical discovery on the main fact issues has been requested and ignored and Plaintiff reurges the request. Thus, Plaintiff will respectfully show as follows:

## I.     Nature and Stage of the Proceedings

This civil rights case was originally filed on November 15, 2020,[1] and then the complaint was amended for the first and so far only time on January 19, 2021.[2] Defendant Lindsay filed his answer to the live complaint on February 12, 2021,[3] he made his initial disclosures on the same date,[4] and Plaintiff made his initial disclosures on February 20, 2021.[5] A pretrial conference is set for September 9, 2021,[6] and despite Plaintiff's request to allow a deposition of Lindsay and for existing critical body worn camera footage of the incident Defendant filed the present motion for summary judgment on July 30, 2021 and the request to allow discovery ignored.[7]

## II.    Statement of Issues

I. Whether Defendant Lindsay is entitled to qualified immunity on any of Plaintiff's constitutional claims.

II. Whether Defendant Lindsay may be liable as a bystander.

III. Whether Plaintiff may be entitled to punitive damages.

## III.   List of Exhibits

1. Sgt. Lindsay's body-worn camera video (hand delivered to the Court Clerk to be put in the case file)

2. Deputy Lane's body-worn camera video (hand delivered to the Court Clerk to be put in the case file).

3. Declaration of Corey Spiller

---

[1] Doc. 1.
[2] Doc. 13.
[3] Doc. 18.
[4] Doc. 19.
[5] Doc. 20.
[6] Doc. 37.
[7] Doc. 38.

4. E-mail requesting relevant discovery

## IV. Corrected Statement of Facts

As will be discussed in further detail in the following section, *all* of Defendant's purported evidence supporting his "facts" section is either inappropriate summary judgment evidence, a misrepresentation of the evidence, or makes impermissible inferences against the Plaintiff as the nonmovant.[8] Thus, it is no surprise that these incorrect facts and inappropriate inferences lead Defendant to the wrong legal conclusions. Moreover, Defendant conspicuously fails to cite to *any* specific portions of his evidence to support specific factual assertions, but instead cites vaguely and unhelpfully to three of his exhibits at the end of each paragraph, and does not cite to his fourth exhibit *at all*.[9]

But even if his "facts" were properly cited, they rely almost exclusively on the statements of interested witnesses, chiefly the retelling of the events *by the Defendant himself*, which cannot and should not be given any level of credibility by this Court.[10] And the "facts" that don't rely on interested witnesses are uncited and blatantly false descriptions of the body camera videos; the footage in no way "establishes Plaintiff resisted arrest," or shows that "Plaintiff assaulted Lindsay."[11] As such, there is no reason for this Court to credit Defendant's facts whatsoever, and the lack of sufficient, appropriate, properly cited evidence on the part of Defendant alone indicates that he has not met his burden on summary judgment.

Instead, the Plaintiff offers the following brief, evidence-based, summary-judgment-appropriate, account of the facts for the Court's consideration:

---

[8] Doc. 38 ¶¶ 2–9; *see* § V. Standard of Review, *ante*.
[9] Doc. 38 ¶¶ 2–9. He does not make any factual citations in his argument either. *See generally* Doc. 38.
[10] *See* Def.'s Exs. A and B.
[11] Doc. 38 ¶ 21; *see generally* Exs. 1 and 2.

Lindsay's response to the scene started with him getting out of his patrol vehicle, and saying aloud *"I don't know what it is tonight, f\*\*\*in' hell."*[12] He then approaches Corey and his girlfriend, who had thus far been positively and politely interacting with Deputies Lane and Johnson.[13] Neither Corey nor his girlfriend appears to be unstable, nor do they slur their speech, nor do they exhibit any other signs of intoxication.[14] Corey's girlfriend is shaken from the accident, but not acting out in any way, while Corey is calm and relaxed, leaning casually against the guard rail.[15]

Lindsay then begins asking them questions. Corey answers the questions asked of him calmly and directly, and then when he was helping his girlfriend answer a question that she did not understand when it was first asked, Lindsay told him to stop talking, and he complied.[16] Lindsay then attempted to get Deputies Lane and Johnson to agree that it smelled like alcohol, which they largely ignored, and to which Deputy Lane responded by shaking his head "no."[17]

Lindsay then started barking orders, telling Corey's girlfriend to go with Deputy Lane, and telling Corey that he could follow them in his car.[18] Corey calmly began to ask a question about his girlfriend's detention, when Lindsay cut him off.[19] After being interrupted, Corey turned toward the two officers with whom he had previously had successful interactions and fruitful communication, Deputies Lane and Johnson, and asked if he could speak with someone else, because it was clear that Lindsay had no interest in communicating with him whatsoever.[20]

---

[12] Ex. 1 at 21:38.
[13] Ex. 1 at 22:10.
[14] Ex. 1 at 22:10–16.
[15] Ex. 1 at 22:10–16.
[16] Ex. 1 at 22:16–23:12.
[17] Ex. 1 at 23:12–18.
[18] Ex. 1 at 23:20–40.
[19] Ex. 1 at 23:20–40.
[20] Ex. 1 at 23:20–40.

Lindsay responded by shouting "I am the supervisor!", grabbing Corey by the throat, and slamming him onto the hood of his car face-up.[21] Lindsay claims he was forcefully elbowed by Corey, but the video evidence demonstrates that Corey was merely maneuvering around Lindsay who had rapidly gotten in his face, and any contact between his elbow and Lindsay was incidental caused by Lindsay moving toward Corey and did not appear to have any force whatsoever.[22] Lindsay claims Corey swung a fist at him, but the video evidence is not so clear and Corey denies it.[23] After he was slammed onto the hood, both body cameras are consistently blocked from fully capturing the encounter.[24] When the videos pick back up, they show that another officer was on top of Corey before he was tased, but notably, neither video shows Corey on top of any officers or throwing any punches from a physically superior position.[25] Plaintiff requested the body worn camera footage of other scene officers but was refused by the Defendant and ignored by the Court.

## V. Standard of Review

A court may only enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact.[26] The Court must draw all reasonable inferences in the light most favorable to the nonmoving party, the Plaintiff here.[27] The burden rests on the moving party to demonstrate

---

[21] Ex. 1 at 23:40–43, Ex. 2 at 8:15–18. Notably, Lindsay later admits to "strangling" Corey, Ex. 1 at 50:00, and laments that he did not "get" to "swing" at Corey because he was holding him "by the throat." Ex. 1 at 42:02–09.
[22] Ex. 2 at 8:13–15.
[23] Ex. 2 at 8:18–20 (shows what may be a swipe by Corey toward Lindsay while Lindsay is choking him and holding him down, but it may also have been Corey trying to push Lindsay off of him; Plaintiff's attorney watching the video at half and full speed could not conclusively tell. Even if it was a swipe, it was of limited force due to Corey's body position and missed Lindsay anyway); Ex. 3, paragraph 12.
[24] Ex. 1 at 23:43–50 (mostly black, only shows Lindsay punching Corey), Ex. 2 at 8:19–27 (mostly black).
[25] Ex. 1 at 23:51–24:05, Ex. 2 at 8:25–45.
[26] Fed. R. Civ. P. 56(a).
[27] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

the lack of a genuine dispute of material fact.[28] On the other hand, the nonmoving party must identify the evidence in the record that supports its claim, and explain how the identified evidence does so.[29] There is a genuine dispute where a reasonable jury could find for the nonmoving party, and a fact is material if it could affect the outcome of the case.[30]

In deciding whether to grant judgment as a matter of law (much like a decision to grant summary judgment), a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is *uncontradicted* and unimpeached, *at least to the extent that that evidence comes from disinterested witnesses*."[31] When liability is disputed, an officer's account will invariably be favorable to himself, and the credibility of that account is crucial.[32] Here, summary judgment clearly cannot rest on the statement of interested witnesses—chiefly Defendant Lindsay himself and the other Deputies-—that Defendant relies upon. "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."[33] Nor can summary judgment rest upon Defendant's interpretation of the body camera videos to the extent that it is contradicted by both the videos themselves and Plaintiff's version of the facts that are supported by the videos.

## VI.    Argument

At the outset, it is worth noting that Defendant has utterly failed to meet his burden on summary judgment. His incompetent evidence comprises of statements by interested witnesses including the Defendant himself, and a wild mischaracterization (at best) of the

---

[28] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).
[29] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted).
[30] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[31] *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).
[32] *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992).
[33] *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

available video evidence, neither of which defeats a genuine dispute of material fact.[34] Instead, what Plaintiff shows is that the video discredits Lindsay's account of the events, and is inconclusive at key parts which will require a jury to evaluate the credibility of witnesses and their accounts in order to determine the outcome of the case.[35] Thus, this case is entirely inappropriate for summary judgment.

Even if Defendant had met his evidentiary burden, his legal arguments also fail, as Plaintiff will now demonstrate.

### A. Each of Plaintiff's constitutional claims were violations of clearly established law, thus overcoming qualified immunity.

"As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[36] The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known,"[37] but instead only applies where the officer's "actions could reasonably have been believed to be legal."[38]

In the summary judgment context, the burden on the plaintiff is partially altered. In the first step of the inquiry, the "plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict" for the plaintiff on a constitutional injury, which

---

[34] *See generally* Doc. 38.
[35] *See* § IV. Corrected Statement of Facts, *supra*.
[36] *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[37] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[38] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011).

would be the same without qualified immunity.³⁹ To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a violation of clearly established law."⁴⁰ In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."⁴¹ Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.⁴²

Thus, Corey will first address how each of his claims easily meet the summary judgment standard, and then show how each right was clearly established at the time of the violation.

1. *By attacking and arresting Plaintiff for no reason discernible from the evidence, Defendant violated Plaintiff's clearly established rights against excessive force and false arrest under the Fourth Amendment.*

The Fifth Circuit most recently addressed the legal standard for excessive force claims in *Joseph v. Bartlett*. In that case, it noted that the Fourth Amendment is violated "when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force."⁴³ In conducting that inquiry, the court looked at several factors: (1) the severity of the crime; (2) whether the suspect posed an immediate safety threat; (3) whether the suspect was actively resisting or attempting to evade arrest; (4) the relationship between the need for force and the amount used; (5) the timing, amount, and form of the

---

³⁹ *Joseph*, 981 F.3d at 330.
⁴⁰ *Id.* (emphasis added).
⁴¹ *Id.* (quotations, citations, and alterations omitted).
⁴² *Id.* (quotations, citations, and alterations omitted).
⁴³ *Id.* at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

suspect's resistance—including whether the suspect was engaged in "active" versus "passive" resistance; and (6) whether the officer selected the appropriate degree of force by taking measured actions that correspond to the suspect's resistance.[44] It further clarified that force is less justified or even *un*justified in the face of passive resistance, and that officers should not immediately resort to a taser or nightstick without attempting to use physical skill, negotiation, or commands.[45]

Further, the Fourth Amendment itself dictates that the "right of the People to be secure . . . against unreasonable . . . seizures[] shall not be violated . . . but upon probable cause."[46]

Taking each constitutional violation in turn, Lindsay's use of force was clearly excessive to the need. Factors (2), (4), and (6) obviously weigh in Corey's favor; he posed no safety threat to anyone before he was slapped in the arm, choked, and slammed into his hood by Lindsay, there was no need for any force at the time Lindsay slapped his arm and then began choking Corey, and Lindsay did not take *any* measured actions that corresponded with Corey's conduct, and instead resorted immediately to slapping his arm and choking him. Factors (1),(3), and (5) also weigh in Corey's favor upon inspection of the *timing* of the altercation. Leading up to Lindsay's use of force, there was no crime at the scene, thus the severity of the crime must weigh in Corey's favor; Corey did not resist arrest but only tried to get air from Lindsay's strangulation with animal instinct passive movements *after* Lindsay started choking him and had slammed him onto the hood causing great pain and any action was instinctive reaction to life threatening strangulation; and while Corey arguably engaged in instinctive preservation of

---

[44] *Id.* at 332–33 (internal quotations, citations, and annotations omitted).
[45] *Id.* (citing *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2015) ("[W]e have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force.") (other citations omitted).
[46] U.S. Const. Amend. IV.

life movements , he, again, did not do so until after he was being strangled. Crucially, *no arrest was attempted* until Lindsay decided to start attacking Corey by slapping his arm and then choking him.[47] Thus, with no factors weighing in Lindsay's favor, he engaged in an objectively unreasonable and excessive use of force.

Regarding the false arrest, Defendant claims that because a "criminal law hearing officer" found probable cause for Corey's *continued* detention *after* his arrest, that probable cause existed for the arrest itself.[48] But that argument does nothing whatsoever to address Corey's *actual* claim, which is that there was no probable cause for Lindsay to initiate the arrest in the first place. Again, the video shows that Corey was not doing anything remotely criminal or unsafe in the minutes and seconds leading up to his strangulation and arrest, only that he was trying to find out information from the other officers about what would be happening with his girlfriend.[49] Moreover, Lindsay was not investigating a crime at all, and Corey was not suspected of any criminal activity. Thus, without even a whiff of probable cause, Corey's subsequent arrest violated the Fourth Amendment. And with respect to qualified immunity, this *exact type* of arrest is what the Fourth Amendment was written to prevent, thus this conduct was obviously unlawful, as no reasonable officer could possibly believe that Corey's actions before the altercation established any level of probable cause.[50]

Regarding qualified immunity on the excessive force claim, helpfully, the Fifth Circuit in *Joseph* did much of Corey's and this Court's homework on the clear establishment step in this

---

[47] *See* Ex. 2 at 8:13–15.
[48] Doc. 38 ¶ 20.
[49] Ex. 1 at 22:10–23:40.
[50] *See also Davidson v. City of Stafford*, No. 16-20217, 2017 U.S. App. LEXIS 5665, at *9 (5th Cir. Mar. 31, 2017) (an "arrest without probable cause violates the clearly established law defining an individual's right under the Fourth Amendment.") (citing *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)).

sort of excessive force case. It noted the principle that "Officers engage in excessive force when they physically strike a suspect who is not resisting arrest" has been established in this Circuit since at least 2013.[51] Further, it relied on two pre-2019 cases showing clear establishment and one counterexample to reach its decision regarding clear establishment.[52]

These cases should be applied the same way here, and demonstrate that Lindsay's treatment of Corey was clearly established excessive force. In *Newman*, the plaintiff did "struggle" by backing into the officers, but it was not considered "active resistance"; and the officers "immediately resorted to [force] without attempting to use physical skill, negotiation, or even commands."[53] The officers there were held liable for excessive force. Similarly in *Ramirez*, the officers applied excessive force by using a taser in response to the plaintiff failing to put his hands behind his back, and pulling his arm away, and that tasing him after he had been handcuffed and on the ground was even more excessive.[54] As a counterexample, the officers in *Pratt* were not liable for excessive force where they tased and hogtied a plaintiff that attempted running away and aggressively kicked out at officers after he had been handcuffed, because level of force matched the level of resistance.[55] Here, Lindsay's immediate resort to choking Corey for trying to speak with a different officer was clearly established as excessive by *Newman* and *Ramirez*, especially considering that Corey had done nothing wrong until that point.

---

[51] *Joseph*, 981 F.3d at 342 (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)).
[52] *Id.* at 338–41 (citing *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), and *Pratt v. Harris Cty.*, 822 F.3d 174 (5th Cir. 2016)).
[53] *Newman* at 763.
[54] *Ramirez* at 378–79.
[55] *Pratt* at 178–79, 182.

>    2. *By arresting Plaintiff for his speech to other officers, Defendant's conduct violated Plaintiff's clearly established rights under the First Amendment.*

On the First Amendment claim, the U.S. Supreme Court recently reiterated the principle that government officials cannot retaliate against individuals for engaging in protected speech absent sufficient non-retaliatory grounds.[56] In order to determine whether an arrest was retaliatory, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest."[57] In the Fifth Circuit, it requires showing that Corey (1) was engaged in a constitutionally protected activity, (2) the Defendant's actions caused an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the Defendant's actions were substantially motivated against his exercise of the constitutionally protected activity.[58]

Here, the analysis is straightforward. Corey was originally speaking with Lindsay, but then wanted to speak with Deputies Lane and Johnson instead, because he had already developed a rapport with them.[59] Conversing with a police officer absent a reason not to is constitutionally protected.[60] Being choked and slammed to the hood of a car would easily chill a person of ordinary firmness from continuing to engage in that activity. And as discussed above, the lack of probable cause for Corey's arrest is evidence that it was caused by Lindsay's animus toward Corey, along with the fact that Lindsay seemed to be slighted by the fact that Corey preferred to speak with the other officers. Between the cases cited above and the fact

---

[56] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006), *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998), *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–84 (1977)).
[57] *Id.* at 1724 (citing *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).
[58] *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (citation omitted).
[59] Ex. 1 at 23:20–40.
[60] U.S. Const. Amend. I.

that this sort of arrest cuts exactly against what the First Amendment seeks to prohibit, qualified immunity is easily overcome.

### B. Defendant can be liable as a bystander to the other officers' violations of Plaintiff's First and Fourth Amendment rights.

As Defendant correctly recites, an officer may be liable under as a bystander when he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[61] Working in the reverse order of Defendant's argument, he claims that he did not have an opportunity to intervene in part because he was "trapped underneath Mr. Spiller and another officer."[62] This claim is demonstrably false in light of the video evidence; neither video shows that Lindsay was ever trapped underneath anyone during the altercation.[63] Similarly, his injuries were minor, and did not prevent him from intervening by words or actions.[64] But Defendant's main argument is that the other officers were not violating Corey's rights, so there was no violation in which to intervene.[65] But the foregoing analysis demonstrates that Corey's rights *were* violated by the altercation and arrest, so this argument falls flat as well.

### C. A reasonable jury could find punitive damages against Defendant.

Finally, Defendant argues that Corey is not entitled to punitive damages.[66] His sole argument is the self-interested statement that "Deputy Lindsay avers he harbored no ill will or malice toward Plaintiff."[67] This argument alone cannot succeed, but even if it could, it ignores

---

[61] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).
[62] Doc. 38 ¶ 23.
[63] Ex. 1 at 23:43–24:05, Ex. 2 at 8:19–45.
[64] Doc. 38 ¶ 23.
[65] Doc. 38 ¶ 23.
[66] Doc. 38 ¶ 25.
[67] Doc. 38 ¶ 25.

the fact that a jury could absolutely look at Lindsay's conduct in the video, see his snappiness and violence toward a man who was calm and doing nothing wrong or provocative, and determine that he acted out of "ill will or malice," and award punitive damages.

### VII. Motion for Continuance to Conduct Discovery

Plaintiff has requested from the defendants and the Court the deposition of Lindsay and the deposition and body worn camera footage from Johnson but was ignored by both. See **Exhibit 4** and Doc. 41. Obviously Lindsay's deposition is relevant to address all the issues and facts he brings up in his declaration attached to his motion for summary judgment and for cross examination. Also, Johnson and other present officers were witnesses and their body worn camera footage would show who is telling the truth-Lindsay or Spiller.

### VIII. Conclusion

Defendant did not meet his summary judgment burden in his motion, and even if he had provided competent evidence, his legal arguments fall flat. Thus, for the foregoing reasons, his motion for summary judgment must be **DENIED**. If not the motion is not Denied Plaintiff requests a continuance to conduct discovery such as the deposition of Lindsay, Johnson, and the other witness law enforcement officers as well as Johnson's and the other officers' body worn camera videos. Plaintiff further requests all other relief in law and equity to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
Attorney for Plaintiff

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
Email: AttorneyKallinen@aol.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on September 7, 2021 I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

*/s/ Alexander C. Johnson*
Alexander C. Johnson